**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

STEVEN HOOD,

      Petitioner,

v.                                                                                          Civil Action No. 2:19cv27

MARK BOLSTER, ACTING WARDEN,

      Respondent.

**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S
MOTION TO DISMISS, OR IN THE ALTERNATIVE,
<u>MOTION FOR SUMMARY JUDGMENT</u>**

COMES NOW Respondent, Acting Warden Mark Bolster, by Counsel and submits this Memorandum of Law in support of the accompanying Motion to Dismiss, or in the alternative, Motion for Summary Judgment. For the reasons set forth below, this Court should dismiss the petition or grant summary judgment in favor of Respondent.

**I. INTRODUCTION**

Petitioner, federal inmate Steven Hood ("Petitioner"), Register Number 08248-028, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, claiming he was not afforded adequate due process during the Bureau of Prisons' administrative inmate disciplinary proceedings in which he was sanctioned for abuse of telephone privileges in 2011. *See* Petition for Writ of Habeas Corpus Pursuant to 18 U.S.C. § 2241 ("Petition"), ECF No. 1 at 2. For relief, Petitioner seeks an order from this Court directing BOP to reinstate 27 days of good conduct time disallowed after Petitioner was found to have committed a prohibited act and expungement of the incident report relating thereto.[1] *Id.* at 8.

---

[1] Although Petitioner asks this Court to reinstate 27 days of good conduct time, Petitioner does not address the validity of the disciplinary hearing officer's ("DHO") decision to disallow the 27 days of good conduct time. His claim seems

Petitioner claims that BOP violated his due process rights during his disciplinary proceedings by not giving him a copy of the Discipline Hearing Officer ("DHO") report in violation of federal regulations and BOP policy, thereby preventing him from appealing the DHO sanctions through BOP's administrative remedy program. However, as explained herein, the DHO hearing provided the required procedural safeguards and the DHO imposed appropriate sanctions, including the disallowance of 27 days of good conduct time ("GCT"). The record upon which the DHO relied contained sufficient evidence to support a finding that Petitioner committed the prohibited act.

The evidence demonstrates that Petitioner's DHO report was signed and completed by DHO Rupert on August 2, 2011 and subsequently delivered to Petitioner on August 3, 2011 by a BOP staff member. *See* Declaration of Jillian Anspach ¶ 15 (Anspach Decl.), attached hereto as Respondent's Exhibit 1. As a result, Petitioner's time in which to file an administrative remedy request did not begin to toll until August 3, 2011, with Petitioner able to pursue appeals thereafter, through the administrative remedy program. Consequently, Petitioner's Petition is moot and the Petition should be denied and dismissed, and judgment entered in favor of Respondent.

## II. STATEMENT OF THE FACTS

1. On May 8, 2008, Petitioner was sentenced to a 360-month term of imprisonment followed by a 5-year term of supervised release by the United States District Court for the Southern District of Indiana after pleading guilty to one count of conspiracy to distribute 500 grams or more of methamphetamine. *See* Judgement and Commitment Order, *United States v. Perez, et al.*, 2:06-cr-0008-JMS-CMM-21 (S.D. Ind. May 5, 2008) (docketed on Jan. 30,

---

to be limited to the assertion that his due process rights were violated when he was not provide a copy of the DHO's report.

2

2013); *see also* Petition at 1.

2. Petitioner is currently serving his sentence at the Federal Correctional Institution Medium in Petersburg, Virginia ("FCI Petersburg"). *See* BOP Inmate Locator, https://www.bop.gov/inmateloc (search by Register Number 08248-028) (last accessed May 31, 2019). The disciplinary proceedings which give rise to the instant petition occurred while Petitioner was housed at FCI Petersburg.

3. On July 23, 2011, Petitioner was issued an incident report charging him with a violation of BOP disciplinary code 297, abuse of telephone privileges for other than criminal activity. *See* Anspach Decl. at ¶ 4. The incident report stated:

   On July 23, 2011 at approximately 8:15 p.m. I began monitoring a high alert live call showing inmate Herrera, Johnny, #01737-298 in B-Unit, station 6020 to a female at (276) 546-7115 in Peningtngp, VA listed as friend making the call. I recognized the inmate's voice not being inmate Herrera and contacted the B-Unit officer, I instructed the B-Unit officer to go and ask the inmate on phone station 6020 what his name was. The B-Unit officer told me he identified the inmate on station 6020 as Hood, Steven, #08248-028, the B-Unit officer approached and asked inmate Hood what his name was and I heard inmate Hood State "Herrera" over the phone.

   *Id.*

4. The incident report was delivered to Petitioner on July 24, 2011 at approximately 11:26 a.m. *See id.*

5. During the investigation of the incident report, Petitioner was advised of his right to remain silent at all stages of the discipline process. *See* Anspach Decl. at ¶ 5. On July 24, 2011, Petitioner was interviewed by the staff member assigned to investigate the incident and declined to make a statement. *Id.* Petitioner did request witnesses appear on his behalf at this time. *Id.*

6. On July 27, 2011, Petitioner appeared before the Unit Discipline Committee ("UDC") to answer for the charges. *See* Anspach Decl. at ¶ 6. During the UDC hearing, Petitioner stated "Herrera did not know I was using his phone. I did the voice activation." *Id.* Due to the severity of the incident, the matter was referred to the DHO for further hearing. *Id.*

7. On the same day, July 27, 2011, Petitioner was given a Notice of Discipline Hearing before the DHO and was advised of his rights at the hearing. *See* Anspach Decl. at ¶ 7. Specifically, Petitioner was advised of the following: his right to have a written copy of the charges against him at least 24 hours prior to appearing before the DHO; to have a staff representative; to call witnesses to testify on his behalf and present documentary evidence; to present a statement or remain silent; to be present throughout the disciplinary hearing; to be advised of the DHO's decision and disposition in writing; and the right to appeal the DHO's decision. *Id.* Petitioner acknowledged being advised of these rights. *Id.* He indicated that he did not wish to be assigned a staff representative or call any witnesses at the hearing. *Id.*

8. On July 29, 2011, Petitioner appeared before the DHO. *See* Anspach Decl. at ¶ 8. At the hearing, Petitioner waived his right to a staff representative and his right to request that witnesses appear on his behalf. *Id.*

9. Petitioner told the DHO at the hearing that he had received his copy of the incident report and that he understood his rights before the DHO. *See* Anspach Decl. at ¶ 9.

10. During the DHO hearing, Petitioner admitted to the charges, stating "Yes, because I was out of minutes." *Id.* Petitioner did not present any exculpatory or documentary evidence for the DHO to take into consideration. *Id.*

11. In addition to the incident report and investigation, the DHO considered a memorandum

submitted by the B-Unit officer, Officer J. Jackson. *See* Anspach Decl. at ¶ 10. The DHO ultimately found Petitioner to have committed the prohibited act as charged. *Id.*

12. The DHO sets forth the specific evidence relied on to support his findings, in Section V of the DHO Report. *See* Anspach Decl. at ¶ 11. The DHO considered the written statement in the form of the incident report authored by Officer M. Blevins, as well as the memorandum submitted by Officer J. Jackson, in finding that Petitioner had committed the act as charged. *Id.* The DHO reasoned that Petitioner's admission to the conduct as charge clearly supported the charge as written. *Id.* Therefore, the DHO concluded that the charge against Petitioner was appropriate and warranted. *Id.*

13. Consequently, the DHO imposed the following administrative sanctions against Petitioner after finding him responsible for the disciplinary infraction: (1) disallowance of 27 days of good conduct time ("GCT"); (2) 3 months loss of commissary privileges; and (3) 6 months loss of telephone privileges. *See* Anspach Decl. at ¶ 12.

14. In imposing these sanctions, the DHO reasoned that "The action/behavior on the part of any inmate to circumvent telephone procedures poses a serious threat to the ability of staff to provide for the safety and security of not only the staff and inmates, but the institution." The DHO went on to explain that the sanctions were imposed in an effort to hold Petitioner accountable for his behavior. *See* Anspach Decl. at ¶ 13.

15. The DHO report was signed and completed by DHO Rupert on August 2, 2011. *See* Anspach Decl., ¶ 14. One day later, on August 3, 2011, the DHO report was delivered to Petitioner by a BOP staff member. *Id.* at ¶ 15. Petitioner was notified that he could appeal the DHO's findings through the BOP's Administrative Remedy Procedures within twenty calendar days of receiving the DHO report. *Id.* As such, Petitioner had until August 23,

2011, to file an administrative remedy request.  *Id.*  Petitioner has not filed an appeal with the BOP, and therefore has not exhausted his administrative remedies with regard to the DHO report, the findings therein and the sanctions imposed.  *Id.* at ¶ 16.

### III. ARGUMENT

**A. Background of Due Process in Prison Disciplinary Proceedings.**

There is no doubt that prisoners may claim the protections of the Due Process Clause in prison disciplinary proceedings.  *See Wolff v. McDonnell*, 418 U.S. 539, 555 (1974).  However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."  *Id.*  To the contrary, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Id.*  As the Supreme Court has explained:

> The requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action.  Where a prisoner has a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment.  Thus, the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily.  This interest, however, must be accommodated in the distinctive setting of a prison, where disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so."  Consequently, in identifying the safeguards required by due process, the Court has recognized the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative remedies that might be susceptible to manipulation and preserving the disciplinary process as a means of rehabilitation.

*Superintendent, Massachusetts Corr. Inst. Walpole v. Hill*, 472 U.S. 445, 455 (1985) (citations omitted).

The Supreme Court set forth the following due process rights that prisoners possess when

a protected liberty interest is at stake[2]: (1) written notice of the charges against them at least 24 hours in advance of the hearing; (2) the opportunity to call witnesses and present documentary evidence when not unduly hazardous to institutional safety or correctional goals; and (3) a written statement of the evidence relied on and the reasons for the disciplinary action taken. *See Wolff*, at 563-67; *see also Crawley v. Wilson*, No. 2:11CV542, 2012 WL 2505118, at *4 (E.D. Va. May 16, 2012).

The fact-finder's decision at a prison disciplinary hearing must be supported by "some evidence" in the record to satisfy due process. *Hill*, 472 U.S. at 455. As long as this standard of proof is met, a federal court will not disturb a disciplinary board's ruling. *Id.* To the extent a disciplinary board's ruling may be administratively appealed, a prisoner has no federal due process rights in the appeal process. *See Brown v. Angelone*, 938 F. Supp. 340, 345 (W.D. Va. 1996) (violations of prison disciplinary appeal procedures do not implicate federal due process rights).

In accordance with the Supreme Court's holding in *Wolff*, the BOP has promulgated regulations setting forth the procedures for BOP inmate discipline hearings. *See* 28 C.F.R. Part 541, *et seq*. According to these rules, when staff reasonably believes that a violation of a BOP regulation has been committed by an inmate, a staff member prepares an incident report. 28 C.F.R. § 541.5(a). Staff provides the inmate a written copy of the charges against him, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident. *Id.* All relevant materials are then forwarded to the Unit Discipline Committee ("UDC") for an initial hearing. 28 C.F.R. § 541.7. When an alleged violation of the BOP's rules is serious and warrants consideration for other than minor sanctions, the UDC refers the charges to the DHO for further proceedings. 28 C.F.R. § 541.7(g).

---

[2] In the instant case, Petitioner's earned GCT is the sole protected liberty interest at stake.

When charges are referred to the DHO, the UDC forwards copies of all relevant documents to the DHO with a brief statement of reasons for the referral, along with any recommendations for appropriate disposition if the DHO finds the inmate committed the act charged. 28 C.F.R. § 541.8. The inmate will be advised of the rights afforded at the hearing before the DHO and he will be given the opportunity to indicate a choice of staff representative, if any, and the names of witnesses the inmate wishes to be called to testify at the hearing and what testimony they are expected to provide. 28 C.F.R. § 541.8(c)-(f). The inmate then lists on the "Notice of Discipline Hearing Before the Discipline Hearing Officer" form all witnesses requested to appear, and is assisted by the staff representative who interviews the witnesses. 28 C.F.R. § 541.8(d).

At the hearing before the DHO, the inmate is entitled to make a statement and to present documentary evidence on his own behalf. 28 C.F.R. § 541.8(f). The inmate also has the right to submit names of requested witnesses and have them called to testify and to present documents on the inmate's behalf, provided the calling of witnesses or the disclosure of documentary evidence does not jeopardize or threaten institutional or an individual's security. *Id.*

The DHO considers all evidence presented at the hearing and bases his decision on at least some facts, and if there is conflicting evidence, on the greater weight of the evidence. 28 C.F.R. § 541.8(f). The DHO determines that the inmate either committed the prohibited act charges and/or a similar prohibited act, if reflected in the incident report, or finds the inmate did not commit the prohibited act charged. The DHO prepares a record of the proceeding. 28 C.F.R. § 541.8(h). The record documents the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO. *Id.* It also includes a brief statement of the reasons for the sanctions imposed. *Id.*

**B. As Petitioner Has Received a Copy of the DHO Report, the Grounds for his Petition are Moot.**

8

Article III of the Constitution requires that federal courts adjudicate only cases and controversies where the controversy is live and ongoing. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990). In prison litigation cases, the Fourth Circuit consistently has held that when a prisoner is no longer subject to the alleged unconstitutional conditions, his claim is moot. *See e.g.*, *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986). When a claim has become moot, the court no longer has jurisdiction to determine the issues presented in the claim. See *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (court lacked jurisdiction "to decide questions that cannot affect the rights of litigants in the case before them"); *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002) (noting that "the question of whether we are presented with a live case or controversy is a question we may raise sua sponte" as mootness goes to heart of Article III jurisdiction (internal quotations omitted)).

It is evident that Petitioner is no longer subject to the alleged unconstitutional conditions presented in his Petition, nor was he subject to such conditions at the time of his filing. Petitioner's claims revolve solely around discipline he alleges he received without ever being provided a copy of the DHO report or being provided the opportunity to appeal the DHO's decision. However, it is clear from the DHO report that Petitioner received a copy of the incident report one day after it was completed and signed on August 2, 2011. *See* Anspach Decl. at ¶¶ 14-15. On August 3, 2011, Petitioner was served with a copy of the DHO report, which contained the DHO's findings, evidentiary support for those findings, and the imposed sanction. *Id.* at ¶ 15.

Petitioner's receipt of the DHO report on August 3, 2011, effectively remedied any condition Petitioner might now claim violated his rights, thus rendering his Petition moot. It is clear that at the time of Petitioner's filing of this petition on January 11, 2019, Petitioner had long

since received a copy of the incident report and DHO report at issue in this case. To be certain, at the time of his filing, Petitioner was not subject to any due process violations. As there are no further issues addressed in the Petition warranting review, the instant Petition should be dismissed in its entirety.

### C. Petitioner Was Afforded All the Due Process Rights to Which He Was Entitled During His Disciplinary Proceeding.

Each of the requirements set out in *Wolff* were met in Petitioner's case. First, Petitioner received written notice of the charges against him at least 24 hours in advance of the hearing. On July 23, 2011, Petitioner was issued an incident report charging him with a violation of BOP disciplinary code 297, use of the telephone for abuses other than criminal activity. *See* Anspach Decl. at ¶ 4. The incident report stated:

> On July 23, 2011 at approximately 8:15 p.m. I began monitoring a high alert live call showing inmate Herrera, Johnny, #01737-298 in B-Unit, station 6020 to a female at (276) 546-7115 in Peningtngp, VA listed as friend making the call. I recognized the inmate's voice not being inmate Herrera and contacted the B-Unit officer, I instructed the B-Unit officer to go and ask the inmate on phone station 6020 what his name was. The B-Unit officer told me he identified the inmate on station 6020 as Hood, Steven, #08248-028, the B-Unit officer approached and asked inmate Hood what his name was and I heard inmate Hood State "Herrera" over the phone.

*Id.* The incident report was delivered to Petitioner on July 24, 2011, at approximately 11:26 a.m. *Id.*

Second, Petitioner was afforded the opportunity to call witnesses and present documentary evidence. Petitioner was advised that he could call witnesses to testify on his behalf and request that a staff representative assist him during the hearing, as well as present documentary evidence. *See* Anspach Decl. at ¶ 7. However, at the DHO hearing on July 29, 2011, Petitioner declined a staff representative and similarly declined to call any witness or present documentary evidence. *Id.* Therefore, the second prong of the *Wolff* test was satisfied as Petitioner was given the

10

opportunity to call witnesses and present documentary evidence.

Lastly, Petitioner was given a written statement of the evidence relied on and the reasons for the disciplinary action taken. On August 3, 2011, Petitioner was given a copy of the DHO report. *See* Anspach Decl. at ¶ 15. In Section V of the DHO report, the DHO outlined the specific evidence relied upon to establish that Petitioner committed the prohibited act of telephone abuse, other than criminal activity. *Id.* at ¶ 11. The DHO explained that in making his decision, he considered the written statement in the form of the incident report provided by Officer M. Blevins and the memorandum provided by B-Unit Officer J. Jackson, as well as Petitioner's admission of guilt. *Id.*

After the administrative hearing, the DHO determined that the greater weight of the evidence demonstrated that Petitioner had abused the telephone system, in violation of BOP policy. The DHO's reasoning is supported by the record evidence and should not be disturbed by the Court as it is well-settled that the fact-finder's decision at a prison disciplinary hearing must be supported by "some evidence" in the record to satisfy due process, *see Hill*, 472 U.S. at 455, and as long as this standard of proof is met, a federal court will not disturb a disciplinary board's ruling. *Id.* In this case, that burden has been easily met.

Additionally, the DHO report specifically stated the reasons for the sanctions imposed by the DHO: "The action/behavior on the part of any inmate to circumvent telephone procedures poses a serious threat to the ability of staff to provide for the safety and security of not only the staff and inmates, but the institution." *See* Anspach Decl. at ¶ 13. The DHO went on to explain that the sanctions were imposed in an effort to hold Petitioner accountable for his behavior. *Id.*

Thus, the third and final prong of the *Wolff* test is satisfied because Petitioner was given a written statement of the evidence relied on and the reasons for the disciplinary sanction against

him.

### D. Petitioner Failed to Properly Exhaust His Administrative Remedies Following Receipt of the DHO Report on August 3, 2011.

Assuming, *arguendo*, that the Court does not dismiss Petitioner's Petition for mootness, Respondent argues that Petitioner has failed to exhaust his administrative remedies since the receipt of the DHO report, and thus, may not bring his claims before this Court. The well-established doctrine of exhaustion of administrative remedies requires that in order for an individual to assert claims for judicial relief, he must first exhaust the prescribed administrative remedy made available to him. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006)(citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). The exhaustion requirement provides an opportunity to resolve a dispute without the burden of litigation. *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3rd Cir. 1996). When a prisoner has failed to exhaust his administrative remedies in a section 2241 action and fails to demonstrate "exception circumstances sufficient to excuse his failure," the district court should refrain from exercising jurisdiction over a habeas petition, and instead dismiss the petition. *See, e.g.*, *Timms v. Johns*, 627 F.3d 525, 533 (4th Cir. 2010).

Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules. *Woodford*, 548 U.S. at 90. Failure to exhaust administrative remedies is excusable only upon a showing of cause and prejudice. *Carmona v. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). Where administrative remedies are no longer available due to a prisoner's failure to fully pursue the remedies, procedural default occurs and section 2241 habeas review is unavailable absent the prisoner's showing of cause and prejudice. *Id.*; *Moscato*, 98 F.3d at 761-62. An inmate must complete all stages of the administrative remedy process before the process is considered properly exhausted. *Woodford*, 548 U.S. at 88-89; *Wright v. Morris*, 11 F.3d 414, 417 n.3 (6th Cir. 1997).

An administrative process has been implemented within the BOP. Title 28 C.F.R. § 542.10, *et seq.*, sets forth the BOP's Administrative Remedy Program, which provides formal review of any complaint that relates to any aspect of the inmate's confinement. Under this process, inmates are encouraged to first attempt resolution of their complaints informally by discussing the matter with a member of their Unit Team. 28 C.F.R. § 542.13. Where a DHO decision is at issue and the attempt at informal resolution does not resolve the matter, the inmate may file a formal complaint with the Regional Director within twenty (20) days of the date on which the inmate was notified of the DHO decision. 28 C.F.R. §§ 542.13, 14(d)(2); BOP PS 5270.09 at 36. If the inmate is dissatisfied with the regional response, he may file an appeal with the National Appeals Administrator at the Bureau of Prisons' Central Office, in Washington, D.C. 28 C.F.R. § 542.15(a). The Central Office appeal is the final level of administrative review in the Bureau of Prisons' administrative remedy process. *Id.*

Here, it is evident that Petitioner received a copy of the DHO report on August 3, 2011, and that the DHO report contains explicit language about Petitioner's appeal rights. *See* Anspach Decl. at ¶ 15. Section VIII of the DHO Report states as follows:

> VIII. Appeal Rights: The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.

*Id.* at Attachment 5. Thus, Petitioner was put on notice that he must file his new administrative remedy within 20 days of August 3, 2011. However, records indicate that Petitioner has only filed one administrative remedy request regarding a DHO appeal during his BOP incarceration, and that appeal was not filed until April 29, 2019 (relating to Petitioner's habeas filing in 2:18cv692). *See* Anspach Decl. at ¶ 16.

Therefore, due to Petitioner's failure to exhaust his administrative remedies prior to

13

initiating this claim, this case should be dismissed for failure to exhaust.

## IV. CONCLUSION

Petitioner committed a disciplinary infraction and was appropriately sanctioned after being afforded adequate due process. As a result, the BOP's administrative discipline of Petitioner should be sustained and Petitioner's request for reinstatement of the 27 days of good conduct time and expungement of the incident report should be denied. For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus should be dismissed, or in the alternative, summary judgment should be entered in favor of the Respondent.

Respectfully submitted,

Mark Bolster, Acting Warden,
  *Respondent*

G. Zachary Terwilliger
United States Attorney

By:   /s/
    George M. Kelley, III
    Assistant United States Attorney
    Virginia Bar No. 13825
    Attorney for the Defendant
    United States Attorney's Office
    101 West Main Street, Suite 8000
    Norfolk, VA 23510
    Telephone: 757-441-6331
    Facsimile: 757-441-6689
    E-Mail: george.kelley@usdoj.gov

Of Counsel:   Genna D. Petre
              Federal Bureau of Prisons

## **CERTIFICATE OF SERVICE**

I do hereby certify that on this 11th day of June 2019, I have electronically filed the foregoing using the CM/ECF system, and I hereby certify that I have mailed a copy of the foregoing to Petitioner, a non CM/ECF participant in this action, via the U.S. mail in a postpaid envelope addressed as follows:

Steven Hood
Reg. No. 08248-028
FCI Petersburg Medium
P.O. Box 1000
Petersburg, VA 23804

    /s/
George M. Kelley, III
Assistant United States Attorney
Virginia Bar No. 13825
Attorney for the Defendant
United States Attorney=s Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Telephone: 757-441-6331
Facsimile: 757-441-6689
E-Mail: george.kelley@usdoj.gov